**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KENNY WATFORD, et al.,               :
                                     :   Civil Action No. 10-3650 (NLH)
         Plaintiffs,                 :
                                     :
     v.                              :   **OPINION**
                                     :
ROBERT BALICKI,                      :
                                     :
         Defendant.                  :

**APPEARANCES**:

Plaintiffs pro se
Kenneth M. Watford
Thomas Wright
Richard Strong
Omar Rivera
Quason Blake
Steven W. Mackay
Aaron Ward
all at
Cumberland County Department of Corrections
54 West Broad Street
Bridgeton, NJ  08302

**HILLMAN**, District Judge

    Plaintiffs Kenneth M. Watford, Thomas Wright, Richard Strong, Omar Rivera, Quason Blake, Steven W. Mackay, and Aaron Ward, pre-trial detainees confined at Cumberland County Department of Corrections in Bridgeton, New Jersey, seek to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of their constitutional rights.  Based on their affidavits of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant

Plaintiffs' applications to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a),[1] and order the Clerk of the Court to file the Complaint.[2]

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.   BACKGROUND

The following factual allegations are taken from Plaintiffs' Complaint and are accepted as true for purposes of this review. Plaintiffs assert that they are pre-trial detainees.  They assert that Warden Balicki authorized a policy that detainees charged with certain offenses (otherwise unspecified in the Complaint) should be placed in handcuffs while traveling throughout the institution.  Plaintiffs allege that this practice puts them in danger when coming into contact with groups of uncuffed prisoners accompanied by a single corrections officer.  The only named

---

[1] Pursuant to Hagan v. Rogers, 570 F.3d 146 (3d Cir. 2009), each prisoner will be ordered to pay the full filing fee of $350.

[2] This matter was originally brought by fifteen co-plaintiffs, but only one plaintiff submitted an application for leave to proceed in forma pauperis.  The Court denied that application for leave to proceed in forma pauperis and granted the plaintiffs leave to move to re-open by either prepaying the filing fee in full or submitting individual applications for leave to proceed in forma pauperis.

defendant is the Warden.  Plaintiffs seek compensatory and punitive damages as well as injunctive relief.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.  Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to

"suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the Twombly pleading standard applies outside the § 1 antitrust context in which it was decided.  See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read Twombly so narrowly as to limit its holding on plausibility to the antitrust context").

> Context matters in notice pleading.  Fair notice under Rule 8(a)(2) depends on the type of case -- some complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Indeed, taking Twombly and the Court's contemporaneous opinion in Erickson v. Pardus,

4

> 127 S.Ct. 2197 (2007), together, we understand the
> Court to instruct that a situation may arise where, at
> some point, the factual detail in a complaint is so
> undeveloped that it does not provide a defendant the
> type of notice of claim which is contemplated by
> Rule 8.  Put another way, in light of Twombly, Rule
> 8(a)(2) requires a "showing" rather than a blanket
> assertion of an entitlement to relief.  We caution that
> without some factual allegation in the complaint, a
> claimant cannot satisfy the requirement that he or she
> provide not only "fair notice," but also the "grounds"
> on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of any civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

> Therefore, after Iqbal, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim should
> be separated.  The District Court must accept all of
> the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions.  Second, a District

5

> Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

6

>rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## IV.  ANALYSIS

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or state law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

Pre-trial detainees and convicted but unsentenced prisoners retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment.  See Hubbard v. Taylor, 399 F.3d 150  (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 (3d Cir. 2000).  Analysis of whether such a detainee or unsentenced prisoner has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979).  Hubbard, 399 F.3d at 157-60, 164-67; Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.  For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...
>
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however.  Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.  Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."  Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees <u>qua</u> detainees.  ...

441 U.S. at 535-39 (citations omitted).

The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility.  "Restraints that are reasonably related to the institution's interest in maintaining

jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." 441 U.S. at 540. Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives. 441 U.S. at 539 n.20. Nor are grossly exaggerated responses to genuine security considerations. Id. at 539 n.20, 561-62.

With respect to medical care and prison conditions, however, pretrial detainees retain at least those constitutional rights enjoyed by convicted prisoners. Bell v. Wolfish, 441 U.S. at 545; Hubbard, 399 F.3d at 165-66; Natale v. Camden County Correctional Facility, 318 F.3d 575, 581-82 (3d Cir. 2003); Kost v. Kozakiewicz, 1 F.3d 176, 187-88 (3d Cir. 1993).

Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including adequate food, clothing, shelter, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832 (1994); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). Accordingly, prison officials must take reasonable measures "to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833 (1994) (internal quotations omitted). "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders

9

pay for their offenses against society.'"  Id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

To successfully state a claim for violation of the Eighth Amendment, an inmate must satisfy both the objective and subjective components of such a claim.  The inmate must allege a deprivation which was "sufficiently serious," and that in their actions or omissions, prison officials exhibited "deliberate indifference" to the inmate's health or safety.  See Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 305 (1991); Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996).

In the context of a failure-to-protect claim, the inmate must show that he is "incarcerated under conditions posing a substantial risk of harm," Farmer, 511 U.S. at 833, and that prison officials knew of and disregarded the excessive risk to inmate safety, Id. at 837.  "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror."  Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985).  "Whether ... prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that ... prison official[s] knew of a substantial risk from the very fact that the risk was obvious."  Farmer, 511 U.S. at 842.

10

Deliberate indifference is more than a mere lack of ordinary due care, however; it is a state of mind equivalent to a reckless disregard of a known risk of harm.  Farmer, 511 U.S. at 834.

Applying Bell and Farmer to the instant action, the first question is whether Plaintiffs have alleged facts showing that inmates, or Plaintiffs in particular, faced a substantial risk of assault based upon their being transported while handcuffed.  The second question is whether Plaintiffs have alleged facts from which it could be inferred that the Warden was aware of and disregarded that risk (demonstrating an intent to punish) or whether an alternative purpose can rationally be assigned to the handcuffing practice and whether the handcuffing practice is excessive in relation to that alternative purpose.

Other than the vague hypothetical that "Many of us have people here who want to bring harm upon us," Plaintiffs have failed to allege any facts that would suggest either that they are at substantial risk of harm when being transported in handcuffs or that Warden Balicki was aware of any such risk of harm and chose to ignore it.  To the contrary, Plaintiffs allege that at least two corrections officers would always be present whenever encountering other prisoners during transport within the jail; those accompanying Plaintiffs and those accompanying other prisoners.  Moreover, Plaintiffs' allegation that pre-trial detainees subject to certain charges are handcuffed while being

11

transported suggest that the practice is related to the perceived dangerousness of the pre-trial detainee.

Moreover, the practice clearly is rationally related to the perceived dangerousness of the handcuffed prisoners, and to the need to protect corrections officers and other prisoners from the dangerous handcuffed prisoners.  Courts consistently have approved this security practice.  See, e.g., Keenan v. Hall, 83 F.3d 1083 (9th Cir. 1996), as amended on denial of rehearing, 135 F3d. 1318 (9th Cir. 1998) ("prison authorities may place a dangerous inmate in shackles and handcuffs when they move him from his cell") (citing LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993) (approving the practice of putting prisoner in restraints, for protection of guards and other prisoners, even if it exposes prisoner to risk of injury in slippery shower)); Strick v. Pitts, 2011 WL 4074756 (W.D. Wash. Sept. 12, 2011) (approving practice of handcuffing while transporting prisoner placed in mental health unit); Grady v. Holmes, 2007 WL 2507395 (E.D. Ga. Aug. 30, 2007) (approving practice of shackling and cuffing solitary prisoner during recreation time).

Plaintiffs have failed to allege any facts that would suggest any impropriety in the practice of handcuffing perceived dangerous prisoners while moving them within the correctional facility.  Plaintiffs allege no harm from the practice other than their fear that the corrections officers present may not be able

12

to protect them should an uncuffed prisoner choose to attack them while they are cuffed.  This generalized fear of vulnerability while being handcuffed is not sufficient to negate the overriding necessity to protect other prisoners and staff while dangerous prisoners are being transported.  Cf., e.g., Florence v. Board of Chosen Freeholders of Burlington Co., 2012 WL 1069092 (April 2, 2012) ("undoubted security imperatives involved in jail supervision" justify, over Fourth and Fourteenth Amendment challenges, strip searches of persons arrested for minor offenses).  The Complaint will be dismissed.

## V.   CONCLUSION

For the reasons set forth above, the Complaint will be dismissed with prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C. § 1997e, for failure to state a claim.  It does not appear that Plaintiffs could cure the deficiencies in the Complaint by amendment.  An appropriate order follows.


At Camden, New Jersey               s/ Noel L. Hillman
                                    Noel L. Hillman
                                    United States District Judge

Dated: April 3, 2012